## UNITED STATES v. MOBLEY et al.

### No. 108.

District Court, S. D. California, N. D.

June 6, 1942.

Wm. Fleet Palmer, U. S. Atty., and Irl D. Brett, and Frederick H. Steinmetz, Sp. Attys., Lands Division, Department of Justice, all of Los Angeles, Cal., for plaintiff.

N. Lindsay South, of Fresno, Cal., for defendants.

YANKWICH, District Judge.

Sierra National Forest is a national forest in the State of California, set apart and reserved on February 14, 1893, by the President of the United States, under the authority of Section 471, Title 16 U.S.C.A. Within its boundaries is a parcel of land containing approximately 4.75 acres, lying in the County of Madera, which, under the authority of the applicable Congressional enactments, 16 U.S.C.A. §§ 471, 472, 473, and under the instructions and regulations of the Secretary of Agriculture, acting through the National Forester, and the National Supervisor of the Sierra National Forest, has been included in a special use area.

As a result of this inclusion, the Department of Agriculture has issued a permit to permittees who have entered and taken possession of the area and have begun its development for recreational and homesite purposes.

The Government of the United States seeks, by this action, to quiet its title to the parcel and to enjoin the defendants, Samuel L. Mobley and Anel Corlieu Mortensen, from occupying any part of it, from asserting any rights to it, and from interfering with the special permittees. The right of the Government to institute the action is not questioned by the defendants. Nor do they challenge the title of the Government to the land. They merely assert possessory rights in it under certain mining claims and special use permits.

As the measure of the rights asserted depends upon certain principles of mining law, we shall reverse the usual order and state these principles first, and refer to the claims made under them, later. This will make it easier to evaluate the claims legally.

The executive power to establish national parks and to "set apart and reserve" public lands for the purpose, 16 U.S.C.A. § 471, is subject to limitations. The one material to the consideration of this case is found in Section 482 of Title 16 U.S.C.A., and reads as follows: "And any mineral lands in any national forest which have been or which may be shown to be such, and subject to entry under the existing mining laws of the United States and the rules and regulations applying thereto, shall continue to be subject to such location and entry, notwithstanding any provisions contained in sections 473–482."

The federal statutory requirements for mining locations are found in Sections 1 to 28, Title 30 U.S.C.A. Those of California are in sections 2301 to 2324, California Public Resources Code, St.1939, pp. 1080–1085.

The cases which deal with limitations of this character see in them an intention on the part of the Congress to preserve intact the right to make mining locations on all public lands. See Teller v. United States, 8 Cir., 1901, 113 F. 273, 280, 281. The few cases which interpret the particular limitation hold that the establishment of a forest reserve does not deprive citizens of the nation of the right to locate mining claims. See United States v. Rizzinelli, D.C.Idaho 1910, 182 F. 675, 683, by Judge Dietrich; United States v. Deasy, D.C.Idaho 1928, 24 F.2d 108, 109, 111, by Judge Cavanah; United States v. Lillibridge, D.C.Cal.1932, 4 F.Supp. 204, by Judge McCormick, Senior Judge of our District.

This interpretation also finds support in Section 478, Title 16 U.S.C.A., which, after protecting the rights of actual settlers within the boundaries of national forests by giving them the right of egress and ingress

over national forests, decrees specifically: "Nor shall anything herein prohibit any person from entering upon such national forests for all proper and lawful purposes, including that of prospecting, locating, and developing the mineral resources thereof. Such persons must comply with the rules and regulations covering such national forests." Rightly. For, why give to citizens the right to enter for the purpose of prospecting, and locating mineral resources, if the establishment of a national forest puts an end to all possibilities of perfecting claims to mining lands? Obviously, prospecting can have no other object than discovery. Discovery is useless unless it can lead to a valid claim.

Miners may be a hopeful clan. But they are not Don Quixotes tilting at imaginary windmills. They would be, if they prospected without hope of acquiring any claims, should fruition come to their efforts.

█ A mining location confers rights only (1) when there is a discovery of minerals in (2) such quantities as would justify a person of ordinary prudence to expend his money and labor with a reasonable assurance of success.

Mere outcroppings, whether appearing on the surface or in shallow works near the surface, do not satisfy the quantum of discovery. See Deffeback v. Hawke, 1885, 115 U.S. 392, 393, 404, 6 S.Ct. 95, 29 L.Ed. 423; United States v. Iron Silver Mining Co., 1888, 128 U.S. 673, 683, 9 S.Ct. 195, 32 L.Ed. 571; Davis' Administrator v. Weibbold, 1891, 139 U.S. 507, 521–523, 11 S.Ct. 628, 35 L.Ed. 238; Iron Silver Mining Co. v. Mike & Starr Co., 1892, 142 U.S. 394, 406, 430, 12 S.Ct. 543, 36 L.Ed. 201; Chrisman v. Miller, 1905, 197 U.S. 313, 321, 25 S.Ct. 468, 49 L.Ed. 770; Cole v. Ralph, 1920, 252 U.S. 286, 296, 40 S.Ct. 321, 64 L.Ed. 567; Cameron v. United States, 1920, 252 U.S. 450, 459, 40 S.Ct. 410, 64 L.Ed. 659; United States v. Southern Pacific Co., 1919, 251 U.S. 1, 11–13, 40 S.Ct. 47, 64 L.Ed. 97.

The rules which these cases declare have long since been recognized in our own Circuit, both by the Circuit Court of Appeals and the District Courts, which have dealt with the problem. See Steele v. Tanana Mines R. Co., 9 Cir., 1906, 148 F. 678; Hall v. McKinnon, 9 Cir., 1911, 193 F. 572, 576; Multnomah Mining, Milling & Development Co. v. United States, 9 Cir., 1914, 211 F. 100, 102; Mason et al. v. Washington-Butte Mining Co., 9 Cir., 1914, 214 F. 32, 36; Grant v. Pilgrim, 9 Cir., 1938, 95 F.2d 562; United States v. Lavenson, D.C.Wash. 1913, 206 F. 755, (opinion written by Judge Cushman); United States v. Northern Pacific R. Co., D.C., 1924, 1 F.2d 53 (opinion written by Judge Bourquin); United States v. Southern Pacific R. Co., D.C.Cal.1926, 11 F.2d 546 (opinion written by Judge James).

We find in Cole v. Ralph, 1920, 252 U.S. 286, 40 S.Ct. 321, 64 L.Ed. 567, an all-embracing summary of the possessory rights of locators of mineral claims and of the need for, and quantum of, discovery before these rights attach and may be asserted against the legal title of the United States to public lands. Mr. Justice Van Devanter, speaking for the Court, said:

"By those laws public lands containing valuable mineral deposits are opened to exploration, occupation and acquisition for mining purposes; and as an inducement to effective exploration the discoverer is given the right to locate a substantial area embracing his discovery, to hold the same and extract the mineral without payment of rent or royalty, so long as he puts one hundred dollars' worth of labor or improvements—called assessment work—upon the claim each year, and to demand and receive a patent at a small sum per acre after he has put five hundred dollars' worth of labor or improvements upon the claim.

"In advance of discovery an explorer in actual occupation and diligently searching for mineral is treated as a licensee or tenant at will, and no right can be initiated or acquired through a forcible, fraudulent or clandestine intrusion upon his possession. But if his occupancy be relaxed, or be merely incidental to something other than a diligent search for mineral, and another enters peaceably, and not fraudulently or clandestinely, and makes a mineral discovery and location, the location so made is valid and must be respected accordingly. Belk v. Meagher, 104 U.S. 279, 287, 26 L.Ed. 735 [738]; [1 Mor.Min.Rep. 510]; Union Oil Co. v. Smith, 249 U.S. 337, 346–348, 39 S.Ct. 308, 63 L.Ed. 635 [640, 641], and cases cited.

"A location based upon discovery gives an exclusive right of possession and enjoyment, is property in the fullest sense, is subject to sale and other forms of disposal, and so long as it is kept alive by

performance of the required annual assessment work prevents any adverse location of the land. Gwillim v. Donnellan, 115 U.S. 45, 49, 5 S.Ct. 1110, 29 L.Ed. 348 [349]; [15 Mor.Min.Rep. 482]; Swanson v. Sears, 224 U.S. 180, 32 S.Ct. 455, 56 L.Ed. 721.

"While the two kinds of location—lode and placer—differ in some respects, a discovery within the limits of the claim is equally essential to both. But to sustain a lode location the discovery must be of a vein or lode of rock in place bearing valuable mineral (section 2320 [30 U.S.C. A. § 23]), and to sustain a placer location it must be of some other form of valuable mineral deposit (section 2329 [30 U.S.C. A. § 35]), one such being scattered particles of gold found in the softer covering of the earth. A placer discovery will not sustain a lode location, nor a lode discovery a placer location. As is said by Mr. Lindley, § 323:

" 'Gold occurs in veins of rock in place, and when so found the land containing it must be appropriated under the laws applicable to lodes. It is also found in placers, and when so found the lands containing it must be appropriated according to the laws applicable to placers.' And again, (section 419): 'It is the mode of occurrence, whether in place or not in place (meaning in rock in place), which determines the manner in which it should be located.'

"Location is the act or series of acts whereby the boundaries of the claim are marked, etc., but it confers no right in the absence of discovery, both being essential to a valid claim. Waskey v. Hammer, 223 U.S. 85, 90, 91, 32 S.Ct. 187, 56 L.Ed. 359 [362, 363]; Beals v. Cone, 27 Colo. 473, 484, 495, 62 P. 948, 83 Am.St.Rep. 92; [20 Mor.Min.Rep. 591]; Round Mountain Min. Co. v. Round Mountain Sphinx Min. Co., 36 Nev. 543, 560, 138 P. 71; New England [& C.] Oil Co. v. Congdon, 152 Cal. 211, 213, 92 P. 180. Nor does assessment work take the place of discovery, for the requirement relating to such work is in the nature of a condition subsequent to a perfected and valid claim and has 'nothing to do with locating or holding a claim before discovery.' " Cole v. Ralph, 252 U.S. 286, 295, 40 S.Ct. 321, 325, 64 L.Ed. 567.

And see Teller v. United States, 8 Cir., 1901, 113 F. 273, 280–281, a leading case on the subject, to which we find constant reference in all subsequent cases; and Dalton v. Clark, 1933, 129 Cal.App. 136, 18 P.2d 752.

On the proposition that mere outcroppings are not sufficient, perhaps no language is better worth quoting than that of our own Ninth Circuit Court of Appeals in Steele v. Tanana Mines R. Co., 1906, 148 F. 678, 679:

"The sum and substance of this evidence is, not that gold had been discovered on the claim in such quantities as to justify a person of ordinary prudence in further expending labor and means with a reasonable prospect of success, but that colors of gold had been found which were fairly good prospects of gold. Doubtless, colors of gold may be found by panning in the dry bed of any creek in Alaska, and miners, upon such encouragement, may be willing to further explore in the hope of finding gold in paying quantities. But such prospects are not sufficient to show that the land is so valuable for mineral as to take it out of the category of agricultural lands and to establish its character as mineral land when it comes to a contest between a mineral claimant and another claiming the land under other laws of the United States. In Chrisman v. Miller, 197 U.S. 313, 25 S.Ct. 468, 49 L.Ed. 770, the Supreme Court affirmed the doctrine, which had previously been announced (1 Lindley on Mines § 336, and cases there cited), that, when the controversy is between two mineral claimants, the rule respecting the sufficiency of a discovery of mineral is more liberal than when it is between a mineral claimant and one seeking to make an agricultural or other entry under the land laws. The reason for this distinction is said to be that, when land is sought to be taken out of the category of agricultural lands, the evidence of its mineral character should be reasonably clear, while in respect to a controversy between rival claimants to mineral land the question is simply which is entitled to priority. That doctrine is applicable to the present case. A greater portion, if not all, of the land of the appellant's placer claim had been previously entered under the homestead law, and as to the remainder, if remainder there were, it was subject to appropriation by the railroad company under Act May 14, 1898, c. 299, 30 Stat. 409 [48 U.S.C.A. §§ 359, 371, 392, 411–419, 421, 423, 461–465], granting rights of way over public lands of the United States in the territory of Alaska to such railroad companies as should accept the grant and

evidence their acceptance in the manner required by the act. In Chrisman v. Miller, the court approved the ruling of the Land Department in Castle v. Womble, 19 Land Dec.Dep.Int. 457, as follows:

" 'Where minerals have been found and the evidence is of such a character that a person of ordinary prudence would be justified in the further expenditure of his labor and means, with a reasonable prospect of success, in developing a valuable mine, the requirements of the statute have been met. To hold otherwise would tend to make of little avail, if not entirely nugatory, that provision of the law whereby "all valuable mineral deposits in lands belonging to the United States * * * are * * * declared to be free and open to exploration and purchase." '

"The court quoted with approval, also, the following from Lindley on Mines, § 336:

" 'The facts which are within the observation of the discoverer, and which induce him to locate, should be such as would justify a man of ordinary prudence, not necessarily a skilled miner, in the expenditure of his time and money in the development of the property.' "

■ If there be a valid location, followed by discovery and the performance of the required yearly assessment work (30 U.S.C.A. § 28), the locator's claim turns into property which is subject to transfer, hypothecation and to the laws of descent and succession. 30 U.S.C.A. § 26; and see Wilbur v. United States ex rel. Krushnic, 1930, 280 U.S. 306, 316, 50 S.Ct. 103, 74 L.Ed. 445; Ickes v. Virginia Colorado Development Corp., 1935, 295 U.S. 639, 644, 645, 55 S.Ct. 888, 79 L.Ed. 1627; Nygard v. Dickinson, 9 Cir., 1938, 97 F.2d 53, 56.

As the legal title of the Government is not challenged, the inquiry is: Do the defendants have any possessory rights?

■ The defendant, Anel Corlieu Mortensen, seeks to ground her right of occupancy on (1) a notice of location of mining claim (quartz) by her father, Charles C. Corlieu, now deceased, on May 17, 1919, and duly recorded on June 13, 1919, in the County of Madera, California, of which the parcel in dispute was a part, (2) a special permit issued to her and a sister on part of the land (three-fourths of an acre) for residential purposes on March 11, 1931, (3) a special use permit for the maintenance of a resort issued to her on June 14, 1937, and

(4) a notice of location of a mining claim (lode) by her on December 3, 1940, and duly recorded on January 2, 1941, in the County of Madera, California. The special use permit of March 11, 1931, for residential purposes, has never been complied with and has long since been abandoned and ceased to be a source of rights for anyone. The special use permit of June 14, 1937, for resort purposes, was cancelled on January 9, 1940, by M. A. Benedict, Forest Supervisor of Sierra National Forest, at the request of defendant Mortensen, in order to give effect to her bill of sale, dated November 24, 1939, which conveyed all her interest in the improvements and personal property on the parcel to S. C. Ramage. There was also an agreement, dated November 25, 1939, between the same persons, whereby Ramage, by reason of the ownership of the personal property acquired by the bill of sale, made certain undertakings with the defendant Mortensen. Both instruments were filed with the Supervisor's office. Significantly, the agreement recited:

"Whereas, the second party is desirous of purchasing said hereinabove described personal property and *obtaining a permit for the resort area hereinabove described.*" (Italics added.)

On January 9, 1940, M. A. Benedict, Forest Supervisor of Sierra National Forest, in compliance with the undertakings in these instruments, issued a special use permit to S. C. Ramage, which recited, among other things: "This permit cancels permit for the same area to Mrs. Anel C. Mortensen dated 3/29.37 in accordance with agreement and bill of sale on file in Forest Supervisor's office."

Ramage is the permittee with whose possession the Government, in its complaint, charges that the defendants are interfering.

The final answer of the defendant Mortensen, on which the case was tried, averred that the special use permit to Ramage was issued "by inadvertence and mistake". But this charge still remains in the realm of assertion. For there is no evidence to show any mistake or inadvertence on the part of anyone in authority in the Forest Service. On the contrary, the testimony at the trial shows that the issuance of the permit to Ramage and the cancellation of the prior special use permit of 1937 were done *advisedly,* after the execution of the two instruments of transfer we have mentioned, that there was a compliance by Ramage with the conditions of the permit

until prevented by the acts of the defendants, which led to the institution of this action.

So that, whatever rights the defendant Mortensen may have, must be sought in her father's and her own notice of mining locations. Those of the defendant Mobley must be sought in his notice of location, upon which his defense rests, is dated October 20, 1940, and was duly recorded in the County of Madera, California, on November 19, 1940. It is a quartz location, and, like that of defendant Mortensen, includes the parcel involved in this suit.

■ I do not think the defendants have shown a discovery of minerals in quantities which would warrant a reasonably prudent person, not necessarily a miner, to expend his labor and means in further development. For the period preceding 1930, during the lifetime of the defendant Mortensen's father, Charles C. Corlieu, the testimony of the defendant Mortensen as to discovery of anything which might be considered mineral, is valueless. She is a woman with no scientific or practical experience as a miner, who resided on the place with her father, at odd times. Her interests are chiefly artistic. She has been employed as an adviser on interior decoration. Her work on the premises, at such times as she occupied them, consisted chiefly of picking up odds and ends of rocks, cones, and wood, and finishing them as curios to sell in the residential cabin which is called a "studio". She was not able to designate her father's works or the mineral, if any, which he extracted through mining operations. Following her father's death, there was no probate of any estate. And there is no decree of any court recognizing her right or the right of any other heirs to any portion of the mining claim. The proof of labor, filed by her on January 16, 1930, signed by her in her individual name and as "executrix of estate", admittedly, was not filed in the latter capacity, as there was no executrix appointed, qualified, or acting at the time. And there never has been one. The testimony as to any assessment work done by her or any members of her family after that year is equally unconvincing. And the evidence, in the record, does not show the performance of assessment work of the type contemplated by law. Section 28, Title 30 U.S.C.A. does not describe the nature of the work to be performed. Nonetheless,

the intent of the section, as interpreted by the decisions of state and federal courts, is that whatever work is done, on or under the surface, shall aim, ultimately, at the extraction of ore from the claim.

We find a terse statement of this principle in James v. Krook, 1933, 42 Ariz. 322, 25 P.2d 1026, 1027: "The annual assessment of $100 on each unpatented mining claim required by section 2324 of the United States Revised Statutes (section 28 of title 30 U.S.C.A.) was evidently intended to be spent in sinking holes or shafts or in running tunnels or drifts therein to discover or locate ore bodies, or in the installation of machinery or fixtures to facilitate the extraction therefrom of any ores that might be found. Lockhart v. Rollins, 2 Idaho, Hasb., 540, 21 P. 413. Labor or improvements that tend to develop the claim and facilitate the extraction of the minerals and the valuable content therefrom may be applied to annual work. Snyder on Mines, § 498; Golden Giant Mining Co. v. Hill, 27 N.M. 124, 198 P. 276, 14 A.L.R. 1450, and note at page 1463".

The same rule has been stated in federal and California cases. See 40 C.J. 829; United States v. Iron Silver Mining Co., 1888, 128 U.S. 673, 9 S.Ct. 195, 32 L.Ed. 571; Jackson v. Roby, 1883, 109 U.S. 440, 444, 3 S.Ct. 301, 27 L.Ed. 990; Wailes v. Davies, C.C.Nev.1907, 158 F. 667, 672; Book v. Justice, Mining Co., 1893, C.C. Nev., 58 F. 106, 117 (a leading mining case in our Circuit, often approved by the Ninth Circuit of Appeals and other courts. See, Walton v. Wild Goose Mining and Trading Co., 1903, 9 Cir., 123 F. 209, 218); Big Three Mining & Mill. Co. v. Hamilton, 1909, 157 Cal. 130, 107 P. 301, 137 Am.St.Rep. 118.

■ As a part of the trial of this cause, the Court viewed the property and examined all its physical characteristics, as well as the works and improvements on it. Other than some holes in the ground, of rather insignificant character, considering the size of the claims, and some evidence of breaking of pieces of rock from outcroppings, admittedly made quite recently, by the defendant Mobley, under his claim, there is no physical evidence of any mining operations during the long period of years dating back to 1915, when Corlieu first occupied the premises. There certainly are no tunnels, adits, pits, shafts, drifts, excavations or large displacements

of rocks, indicative of mining activities. As there is no evidence of any catastrophic change in the configuration of the locality, in recent years, we must assume that it is the same now as it was during this long course of years, except, of course, as it has been changed by the workings of men. The improvements built on the premises quite obviously indicate operations other than mining. They show clearly that the intent of all was to construct a resort of some kind aimed to satisfy the needs of the Corlieu family or of those who seek pleasure in California forests. The buildings are chiefly cabins, tent bases, a bath-house, built adjoining a natural pool into which a natural warm spring had been canalized through piping, and the like. The only structure, which may be related to mining, is a water wheel built to raise the water from the bed of the creek. These structures cluster around the creek at its wildest and most picturesque turn and evince an intention to exploit *not the minerals but the beauty of nature.* For it must be conceded that whoever chose the location, appreciated the beautiful in nature. Admit that in mining operations water is essential and that structures which are necessary in mining development, other than diggings in the ground, may be taken into account in determining the value of yearly assessment work. A stamp mill, for instance, is an adjunct to mining. So is water. But where, after long years of occupancy of alleged mining claims, there is no showing of work on any of the ground or the outcroppings, through any of the means known in lode or placer mining, no accumulations of ores on the ground, an unused water wheel cannot be taken as evidence of assessment work done in compliance with the requirements, which are the same under both state and federal law. 30 U.S.C.A. § 28; California Public Resources Code, § 2314. Nor does the work done on the Mobley claim amount to compliance. The largest hole in the ground is of recent origin, made after the institution of this action. More, there is no evidence to support the claim of the defendants that any mineral in sufficient amount to satisfy the quantum of discovery was ever found by anyone. There is no evidence that Charles C. Corlieu found any mineral. Nor has the mineral he may have found been identified. The defendant Mortensen at first claimed molybdenum, then tungsten. She has no experience to enable her to identify either. Defendant

Mobley had had experience as a practical miner. As the presumptive owner of a claim, I allowed him to give his opinion as to minerals found. He has no background of education in mining, other than such as he claims to have acquired from reading volumes of an old encyclopedia, dating back to 1903. He is not an assayer, and he has not had practical experience to enable him to determine the quantity of minerals in a rock.

As against this, we have the testimony of an outstanding metallurgist that laboratory analyses, in the light of the most improved scientific methods, of samples taken from the discovery places designated by the two claimants, fail to show the presence of tungsten or of any other valuable mineral in any appreciable quantity. To be exact, the estimated quantity of tungsten present is one-thousandth of one per cent (0.001%). Of gold, after assaying, only a trace was found. And of silver, .1 ounce, of the value of 0.07. If to this we add the testimony of a geologist, with long experience in the field, that studies on the ground lead to the conclusion that no minerals are present in quantities warranting exploitation, if, in other words, to the hopes and surmises of the defendants, we oppose the scientifically grounded judgments of experts, only one conclusion is possible, namely, that, under the facts in the case, as assayed by the legal principles which we have expounded, the claims, of which the parcel in dispute is a part, are not mineral in character.

As said by the Supreme Court of the United States, in a leading case, United States v. Iron Silver Mining Co., 1888, 128 U.S. 673, 683, 9 S.Ct. 195, 199, 32 L.Ed. 571: "It is not enough that there may have been some indications by outcroppings on the surface of the existence of lodes or veins of rock in place bearing gold or silver or other metal to justify their designation as 'known' veins or lodes. To meet that designation the lodes or veins must be clearly ascertained, and be of such extent as to render the land more valuable on that account, and justify their exploitation."

Consequently, the locations, under which the defendants claim, never had any validity. There was no discovery of minerals in a quantity sufficient to comply with the quantum required by law. There was no assessment work done on any of the claims which might lead to the extraction

of ores valuable for their mineral contents. On the contrary, the evidence in the case, and the view of the premises and of the works and improvements on them, show conclusively that the defendants are attempting to retain the possession of a portion of a national forest, under the guise of illusory mining claims.

This conclusion is fortified by the fact that the defendant Mortensen applied for two special use permits. These applications were voluntarily made. At the time she made them, she made no assertion of any superior rights under the mining laws. Her request for them and acceptance of the burdens they imposed, although not complied with, and later abandoned or transferred to others, tend to prove that mining was not uppermost in her mind, but that the use of the premises for resort purposes was. For she was willing to waive her mining rights, at least to the parcel involved, by accepting possessory rights to it under the law relating to national forests.

We conclude that neither defendant has any valid right, possessory or other, which he or she can assert against the Government of the United States, or any of its permittees, and that the Government is entitled to a decree quieting its title to the parcel of land, as prayed for in its complaint, and a permanent injunction enjoining the defendants from asserting any right to it or interfering with the possession of any persons acting under the authority of the Government.

Findings and judgment to be prepared by counsel for the Government under Local Rule 8.