**Diana WEBB, in her capacity as personal representative of the Estate of George Schultz, Plaintiff–Appellee,**

**v.**

**Donald P. HODEL, Secretary of the United States Department of the Interior; David K. Grayson, Assistant Regional Solicitor, United States Department of the Interior; Robert F. Burford, Director, Bureau of Land Management, United States Department of the Interior; Roland Robison, Utah State Director, Bureau of Land Management, United States Department of the Interior; and the United States Department of the Interior, Defendants–Appellants.**

No. 87–1997.

United States Court of Appeals, Tenth Circuit.

June 19, 1989.

Craig S. Cook, Salt Lake City, Utah, for plaintiff-appellee.

Sarah P. Robinson, Dept. of Justice, Washington, D.C. (Roger J. Marzulla, Asst. Atty. Gen., Dept. of Justice, Washington, D.C., Brent D. Ward, U.S. Atty., and Kathleen B. Barrett, Asst. U.S. Atty., Salt Lake City, Utah, Gerald S. Fish, and Martin W. Matzen, Dept. of Justice, Washington, D.C., with her on the briefs), for defendants-appellants.

Before McKAY, SETH and BRORBY, Circuit Judges.

BRORBY, Circuit Judge.

This case arose out of the Bureau of Land Management's (BLM) voiding of 359 unpatented mining claims which belonged to George R. Schultz, because of Schultz's location of the claims while he was married to a BLM employee violated 43 U.S.C. § 11 (1976) and 43 C.F.R. § 20.735–24 (1982). Schultz appealed the agency decision to the Interior Board of Land Appeals (IBLA), which affirmed. *George R. Schultz,* 92 Interior Dec. 83, 85 IBLA 77 (1985). Schultz next sought judicial review from the United States District Court for the District of Utah. The government moved for summary judgment contending the agency action was supported by a reasonable interpretation of the statute and regulations. The district court denied the government's motion and granted judgment for Schultz finding the agency action voiding Schultz's claims was in excess of the statutory authority granted by Congress in 43 U.S.C. § 11 (1983). The government appeals. We AFFIRM.

### Facts

Diana Webb has been an employee of the Moab District of the Utah State BLM since November 5, 1978. On February 16, 1979 she married Schultz. From 1982 to 1983 Schultz entered the public lands administered by the Moab District of the BLM under the Department of Interior, and the federal lands administered by the Forest Service under the United States Department of Agriculture, and located unpatented mining claims pursuant to the mining laws contained at 30 U.S.C. § 22 (1983). These claims were properly marked and recorded under the applicable state and federal mining laws. In July 1982 Schultz formed Chinle Associates, a sole proprietorship, to manage his claims. Webb had no role in Chinle Associates. Complaint ¶¶ 9–15.

On December 21, 1983 the Utah State BLM Office issued a first decision declaring 353 of the claims void *ab initio,* stating "the attempted mining locations by a spouse of a [BLM] employee is a violation of [43 U.S.C.] § 11 (1976) and [43 C.F.R.]

§ 20.735–24 (1982)...." Complaint exhibit C. On January 10, 1984 the Utah State BLM office issued a second decision declaring the remaining three claims void *ab initio* for the same reason stated in the first decision. Complaint exhibit D.

Schultz filed a timely appeal with the Department's Interior Board of Land Appeals (IBLA). On February 14, 1985 the IBLA issued a decision affirming the BLM decisions, *George R. Schultz*, 92 Interior Dec. 83, 85 IBLA 77 (1985). The IBLA found the evidence inconclusive as to whether Webb had indirectly purchased or become interested in any public lands as prohibited under the terms of the statute. *Id.* 85–86. Rather the IBLA found Schultz's holding of mining claims while his wife was employed by the BLM was proscribed by the Department regulations, stating:

> 43 CFR 20.735–24(b)(1) prohibits a "member" of BLM from "voluntarily acquiring a direct or indirect interest in federal lands." "Indirect interest" is defined to include "[h]oldings in land, mineral rights, grazing rights or livestock which in any manner is connected with or involves the substantial use of the resources or facilities of the federal lands" and specifically includes "[s]ubstantial holdings of a spouse." 43 CFR 20.735–24(a)(4).

*Id.* at 86. It concluded under the regulations Webb had "acquired an indirect interest in Federal lands via her spouse's locating a substantial number of mining claims" making the claims void. *Id.* at 88.

On November 22, 1985 Schultz appealed the IBLA decision to the United States District Court for the District of Utah pursuant to 28 U.S.C. § 1331 (1982). While the appeal was pending Schultz died and Webb was substituted as plaintiff in her capacity as general personal representative of the estate.[1] The government moved for summary judgment contending its decisions were supported by a reasonable interpretation of the governing statute and reg-

ulations. The district court denied the government's motion holding the agency action was in excess of the statutory authority granted the Department by Congress. The court set aside the action voiding the claims and remanded the case to the IBLA for action consistent with its opinion.

The government appeals and asserts the following issue for review:

> Whether the location of 359 mining claims on federal lands by the spouse of an employee of the Bureau of Land Management (BLM) violates 43 U.S.C. 11 which prohibits BLM employees from, *inter alia*, "directly or indirectly purchasing or becoming interested in the purchase of any of the public land" and the Department of Interior's conflict of interest regulations, 43 C.F.R. Part 20, which implement, *inter alia*, 43 U.S.C. 11, and, if so, whether the mining claims are void *ab initio*.

Appellants Brief at 2.

### Analysis

■ On appeal from a district court's review of an agency's action, the appellate court " 'must render an independent decision on the basis of the same administrative record as that before the district court; the identical standard of review is employed at both levels; and once appealed, the district court decision is accorded no particular deference.' " *Brown v. United States Dept. of Interior*, 679 F.2d 747, 748–49 (8th Cir.1982) (quoting *First Nat'l Bank of Fayetteville v. Smith*, 508 F.2d 1371, 1374 (8th Cir.1974), *cert. denied*, 421 U.S. 930, 95 S.Ct. 1655, 44 L.Ed.2d 86 (1975)). The facts in this case are undisputed. The issues posed for review are strictly legal ones. In our review of the IBLA's application of legal concepts to the undisputed facts, it is the duty of this court to set aside the decision of the IBLA if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1983); *Hurley v. United States*, 575 F.2d 792, 793 (10th

---

1. Nothing in the record presented to us indicates any interest Webb acquired in the mining claims by virtue of Schultz's death. We will refer to Schultz in discussing the interests of his estate and only refer to Webb in her individual capacity unless otherwise specified.

Cir.1978). Review under the "arbitrary and capricious standard" requires the court to decide whether the agency acted within the scope of its authority, whether the actual choice made was based on a consideration of the relevant factors, whether there has been a clear error of judgment, and whether the agency's action followed the necessary procedural requirements. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415–17, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971). Applying this standard we conclude, like the district court, that the IBLA decision must be reversed.

■ The issue in this case involves statutory construction. The court is required to give substantial weight to the interpretation made by the agency which is charged with the statute's administration. *Griggs v. Duke Power Co.*, 401 U.S. 424, 433–34, 91 S.Ct. 849, 854–55, 28 L.Ed.2d 158 (1971). We are obligated to regard as controlling a reasonable, consistently applied interpretation of the government. *Ehlert v. United States*, 402 U.S. 99, 105, 91 S.Ct. 1319, 1323, 28 L.Ed.2d 625 (1971). While administrative agency regulations are entitled to judicial deference, they are not legally binding on the court. *Newmon v. Delta Air Lines, Inc.*, 374 F.Supp. 238, 245 (N.D. Ga.1973). Regulations are entitled to no deference if they are inconsistent with congressional intent, *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 94, 94 S.Ct. 334, 339, 38 L.Ed.2d 287 (1973), or if there are compelling indications that the regulations are wrong. *Red Lion Broadcasting Co. v. Federal Comm. Comm'n*, 395 U.S. 367, 381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969).

■ In construing a statute, the court must begin with the statutory language itself. *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981); *Wilson v. Stocker*, 819 F.2d 943, 948 (10th Cir.1987). If the statute is unambiguous, the literal language of the statute controls. *Glenpool Util. Servs. Auth. v. Creek Co. Rural Water Dist. No. 2*, 861 F.2d 1211, 1214 (10th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989). 43 U.S.C.A. § 11 (1986) states:

> The officers, clerks, and employees in the Bureau of Land Management are prohibited from directly or indirectly purchasing or becoming interested in the purchase of any of the public land; and any person who violates this section shall forthwith be removed from his office.

A plain reading of this statute indicates its prohibitions are directed at BLM officers, clerks, and employees. *Herbert McMicken*, 11 Interior Dec. 96, 98 (1890). The BLM is given no jurisdiction over the spouses of BLM officers, clerks, and employees. If Congress had intended the prohibitions of this statute to apply to the spouses of BLM employees, it would have explicitly included spouses. *See e.g.*, 18 U.S.C. § 208 (1983) (any executive employee who participates in a government matter in which, to his knowledge, his spouse has a financial interest shall be fined or imprisoned). Under a plain reading of the statute, the BLM was without statutory authority to void Schultz's claims.

This construction is consistent with the revised agency regulation which no longer prohibits spouses of BLM employees from acquiring interests in federal lands. In 1981 the BLM regulations on conflicts of interest were revised. The provisions of 43 C.F.R. Part 7 were modified and incorporated into 43 C.F.R. Part 20. 46 F.R. 58420. At the time of incorporation, 43 C.F.R. § 7.3 stated in pertinent part:

> (a) An employee and the *spouse* of an employee ... are prohibited from:
> (1) Voluntarily acquiring an interest in the lands or resources administered by the Bureau of Land Management....

(Emphasis added.) The revised section deletes the prohibition against the spouse and reads in pertinent part:

> (a)(4) "Indirect interest in federal lands" means any ownership or part ownership of an interest in federal lands by an employee in the name of another where the employee still reaps the benefits. Indirect interest in federal lands also includes:
> ....

(ii) Substantial holdings of a spouse or dependent child.

(b) *Prohibitions.* (1) The Director and members of the ... Bureau of Land Management ... are prohibited from:

(i) Voluntarily acquiring a direct or indirect interest in federal lands....

43 C.F.R. § 20.735–24 (1986). The revised regulation is consistent with the original regulation which recognized the statute gave the agency no authority to void the claims of spouses, but cautioned the spouse's purchase of federal lands would be cause for dismissal of the employee.[2]

The government argues Schultz's claims are void because Webb acquired a prohibited indirect interest in the claims by virtue of her marriage to Schultz at the time of the location of the claims. Although the IBLA was aware that W. William Howard and James L. Schultz received deeds dated July 18, 1983, from George R. and Mary Schultz, "husband and wife," quitclaiming undivided interest in several of the claims, 92 Interior Dec. at 84, n. 1, it did not find under the *statute* that Webb had an indirect interest in the claims. 92 Interior Dec. at 85–86. The district court agreed with this conclusion. Memorandum Opinion and Order. Based on the record presented on appeal by the parties we also agree.

The phrase "indirectly purchasing or becoming interested in the purchase of any of the public land" is not defined in the statute. Nor have we found help in review of the legislative history[3] or the case law.

---

2. On May 12, 1906 the Department of Interior approved a circular on the "Right of Wife of Employee of General Land Office to Purchase Public Land" which stated in part:

> While section 452 of the Revised Statutes [recodified as 43 U.S.C. § 11] does not prohibit the acquisition of title to the public lands of the United States under appropriate laws by the wives of officers, clerks, and employees of the land department it is not deemed advisable or proper in the interest of good administration that they should do so. Accordingly, such officers, clerks, and employees, are advised that the application, entry, purchase, or acquisition of title, directly or indirectly, to any of the public lands by their wives, prior to the separation from the service of such officers, clerks, or employees, will be deemed a sufficient cause upon which to base a recommendation for removal or dismissal from the service of the officer, clerk, or employee whose wife acquires or seeks to acquire title to any of the public lands.

Circulars and Regulations of the General Land Office, at p. 1026 (1930) (also reported as 34 Land Dec. 605).

3. This statute was originally enacted in 1812, Act of April 25, 1812, ch. 68, § 10, 2 Stat. 717, and has remained substantially unchanged over the years. The original prohibition in the Act stated:

> That no person appointed to an office instituted by this act, or employed in any such office, shall directly or indirectly be concerned in the purchase of any right, title or interest, in any public land, either in his own right, or in trust for any other person, or in the name or right of any other person in trust for himself, nor shall take or receive any fee or emolument for negotiating or transacting the business of the office. And any person offending in the premises against the prohibitions of this act, shall forfeit and pay one hundred dollars; and, upon conviction, shall be removed from office.

An Act for the establishment of a General Land Office, Act of April 25, 1812, ch. 68, § 10, 2 Stat. 717. This provision was adopted without comment in the debates of Congress. 23 Annals of Congress 1108, 1240, 1327, 1329; 12 Cong., 1st Sess. (1812).

The Act of 1812 was superseded when the General Land Office was reorganized in the Act of July 4, 1836, ch. 352, § 14, 5 Stat. 112. The new Act contained the following modified language:

> That all and every of the officers whose salaries are hereinbefore provided for, are hereby prohibited from directly or indirectly purchasing, or in any way becoming interested in the purchase of any of the public land; and in case of a violation of this section by such officer, and on proof thereof being made to the President of the United States, such officer, so offending, shall be forthwith removed from office.

*Id.* This section was adopted when the House committee considered this bill from the Senate, "Mr. HAWES submitted an amendment prohibiting officers of the General Land Office from purchasing public lands. Agreed to." 67 Debates of Congress 4606, 24th Cong., 1st Sess. (1836).

The Revised Statutes § 452, adopted December 1, 1873, enlarged upon the language of § 14 of the Act of 1836 and provided:

> The officers, clerks and employees in the General Land Office are prohibited from directly or indirectly purchasing or becoming interested in the purchase of any of the public land; and any person who violates this section shall forthwith be removed form his office.

The language of § 452 remained substantially without change when it was recodified at 43 U.S.C. § 11.

The government suggests this case is controlled by *Waskey v. Hammer*, 223 U.S. 85, 32 S.Ct. 187, 56 L.Ed. 359 (1912), and *Prosser v. Finn*, 208 U.S. 67, 28 S.Ct. 225, 52 L.Ed. 392 (1908). Both cases are distinguishable because they involve an employee's direct acquisition of mining claims while employed by the General Land Office (reorganized as the Bureau of Land Management). Neither case defines an indirect interest nor do they involve actions by the spouse of an employee.

The only case on indirect interest the parties cited is *United States v. Mississippi Valley Generating Co.*, 364 U.S. 520, 81 S.Ct. 294, 5 L.Ed.2d 268 (1961). The Supreme Court was called on to construe a similar term in a general, government conflict of interest statute. The government sought to avoid a contract because the government agent, Wenzell, who negotiated the terms of the contract was "directly or indirectly" interested in the contract, a violation of 18 U.S.C. § 434.[4] *Id.* at 524, n. 2, 81 S.Ct. at 296, n. 2. In determining whether Wenzell's activities fell within the prohibitions of the statute the Court stated:

> We think that the findings of the lower court demonstrate that, at the very least, Wenzell had an indirect interest in the contract which the sponsors were attempting to obtain. That interest may be described as follows: Wenzell was an officer and executive of First Boston; he not only shared in the profits which First Boston made during the year, but he also received a bonus for any business which he brought to the firm; if a contract between the Government and the sponsors was ultimately agreed upon, there

was a substantial probability that, because of its prior experience in the area of private power financing, First Boston would be hired to secure the financing for the proposed Memphis project; if First Boston did receive the contract, it might not only profit directly from that contract, but it would achieve great prestige and would thereby be likely to receive other business of the same kind in the future; therefore, Wenzell, as an officer and profit-sharer of First Boston, could expect to benefit from any agreement that might be made between the Government and the sponsors.

364 U.S. at 555, 81 S.Ct. at 312. The Court's analysis focuses on the benefits Wenzell would receive as a result of his negotiation of a government contract that would benefit First Boston. These benefits flow directly from his interest in First Boston as a profit sharer.

The evidence in the record before us fails to establish Webb's relationship to Schultz's claims through their marriage created a substantial likelihood that Webb would reap benefits from these claims.[5] There is no evidence that Webb was a locator, co-owner or owner of any of the claims, or that she had any other business relationship to the claims which would result in her receipt of income or other benefits from the claims. We are not persuaded that Webb had an indirect interest under the statute.

■ The IBLA's conclusion that Webb had an indirect interest is based solely on the regulation defining "indirect interest"

**4.** The statute reads as follows:
> Whoever, being an officer, agent or member of, or directly or indirectly interested in the pecuniary profits or contracts of any corporation, joint-stock company, or association, or any firm or partnership, or other business entity, is employed or acts as an officer or agent of the United States for the transaction of business with such business entity, shall be fined not more than $2,000 or imprisoned not more than two years, or both.

(Section repealed October 23, 1962.)

**5.** The district court's opinion indicates at the hearing on summary judgment the government presented evidence that Webb possessed some

direct interest in the claims, specifically a check addressed to George and Mary Schultz for $15,000 from the lessees of some of the claims. There is no indication in the record that this evidence was ever presented to the BLM or IBLA. Generally, under an "arbitrary and capricious" review the courts are not entitled to review evidence beyond the administrative record. *See Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973); *Asarco Inc. v. U.S. Environmental Protection Agency*, 616 F.2d 1153, 1158–60 (9th Cir.1980). We are bound by the IBLA's conclusion that the evidence was insufficient to establish Webb's interest under the statute. 92 Interior Dec. at 85–86.

as "substantial holdings of a spouse", 43 C.F.R. 20.735–24(a)(4)(ii). 92 Interior Dec. at 86. The government contends the financial interdependence of spouses under state law amply supports the agency's determination that an employee is indirectly interested in the property of her spouse. Appellant's Brief at 24. This contention is based on Utah statutes which provide: spouses are jointly liable for family expenses (Utah Code Ann. § 30–2–9); each spouse has the duty to support the other in time of need (Utah Code Ann. §§ 78–45–3 and 78–45–4); upon divorce marital property is distributed as reasonable and necessary (Utah Code Ann. § 30–3–5); and upon death the surviving spouse has an elective share of the estate (Utah Code Ann. § 75–2–201). Appellant's Brief at 25. We do not agree that these state statutes give the spouse an indirect interest in an unpatented mining claim.

■ The locator of an unpatented mining claim, properly located, has a vested property interest. *Cole v. Ralph*, 252 U.S. 286, 295, 40 S.Ct. 321, 325, 64 L.Ed. 567 (1920); *Shell Oil Co. v. Andrus*, 591 F.2d 597, 603 (10th Cir.1979), *aff'd*, 446 U.S. 657, 100 S.Ct. 1932, 64 L.Ed.2d 593 (1980). The Supreme Court rejected the argument that a Montana statute, which gave a widow an elective share in her husband's estate under dower, gave the widow a right of dower in an unpatented mining claim that her husband had owned during their marriage. *Black v. Elkhorn Mining Co.*, 163 U.S. 445, 16 S.Ct. 1101, 41 L.Ed. 221 (1896). In coming to this conclusion the Court recognized that the states treat a locator's possessory interest in an unpatented mining claim as property which may be sold, mortgaged or inherited. *Id.* at 449, 16 S.Ct. at 1102. However, the Court relied solely on the federal laws to determine the rights of the locator and his spouse, stating:

> It does not by its terms grant any right to the wife of the locator either present or contingent. Being the owner of the lands, the government could of course impose its own terms upon which to grant any right, whether of possession or of purchase.

*Id.* at 448, 16 S.Ct. at 1102. The Court concluded, "[w]e do not think that under the Federal statute the locator takes such an estate in the claim that dower attaches to it." *Id.* at 450, 16 S.Ct. at 1103. Based on the reasoning in *Black*, we are not persuaded that a spouse's rights in a locator's unpatented mining claim may be defined by state law.

■ The regulation prohibits an employee from "[v]oluntarily acquiring a direct or indirect interest in federal lands." 43 C.F.R. § 20.735–24(b)(i). Our review of the record presented on appeal fails to establish Webb voluntarily participated in the acquisition of Schultz's mining claims.

There is no evidence that Webb directed Schultz to locate the claims on her behalf or participated in the location of the claims. The regulation defines indirect interest as the ownership of an interest in federal lands by an employee in the name of another where the employee reaps the benefits. 43 C.F.R. § 20.735–24(a)(4). This requirement that the employee reap the benefits applies to an employee's indirect interests held by the employee's spouse. Without a showing that Webb is entitled to reap the benefits of her spouse's holdings, we cannot conclude that their relationship alone causes Webb to have an indirect interest. The mere ownership of the claims by Webb's spouse standing alone is not enough to establish an indirect interest.

Where the IBLA determined there was not sufficient evidence in the record to establish Webb's indirect interest under the statute, it would be arbitrary and capricious to find sufficient evidence of her indirect interest under the regulation. To support a finding of an employee's indirect interest under the statute or regulation the agency must establish the employee is entitled to receive the benefit of the interest in the federal lands.

The government argues that if Webb has an indirect interest in a claim, then the claim is void *ab initio*. If it were determined that Webb was the sole owner and beneficiary of an indirect interest in a claim held in the name of another, then the entire claim could be voided, as provided in *Waskey*, 223 U.S. at 94–95, 32 S.Ct. at 189, because the other party's interest in the claim is a mere subterfuge. However, if it

is determined that Webb's indirect interest is that of a co-owner, then only Webb's interest can be voided and the other co-owner's interest remains intact. *Floyd v. Montgomery*, 26 Interior Dec. 122, 139 (1898) (Co-owner of undivided one-twentieth interest in a mining claim, who was a deputy mineral surveyor at the time of acquisition, was not permitted to patent the claim. Co-owner's name was stricken from the entry and the patent was issued to the others.); *Alfred Baltzell*, 29 Interior Dec. 333, 334 (1899) (Baltzell was a deputy mineral surveyor at the time he made a mineral entry for himself and the California Consolidated Iron Mine. His name was stricken from the entry and omitted from the patent.) If Webb has an indirect interest in the claims as a co-owner, then the proper remedy is to void her interest while leaving Schultz's interest intact. If the BLM finds the administration of Schultz's mining claims creates a conflict of interest, it may still remove Webb according to its procedures.

We AFFIRM the district court decision and REMAND to the District Court with instructions to order the claims reinstated.