AMERICAN BOSCH MAGNETO CORPORATION, Plaintiff, *v.* ROBERT BOSCH MAGNETO COMPANY, INC., Defendant.

Supreme Court, New York County, April 22, 1926.

Aliens — sale by Alien Property Custodian of enemy property — Trading with Enemy Act, § 12, giving Alien Property Custodian right to dispose of enemy owned property held in trust does not invalidate sale to alien — fact that sale is made with knowledge of purchaser's alienage does not void sale — action to enjoin defendant from unfair competition by use of name " Bosch " under which plaintiff manufactures and sells automobile products — pleadings — answer — second separate defense that plaintiff acquired no title to property by reason of alienage of assignor insufficient and stricken out — third separate defense attacking legality of sale of assets of corporation to said assignor and reciting conspiracy between Alien Property Custodian and others presents question for court of equity — said defense sufficient by reason of acquiescence of plaintiff in use of name " Bosch "— title of plaintiff to assets including good will, is unimpeachable under Trading with Enemy Act, § 7 — defendant not entitled to trade under its name in patented articles.

Section 12 of the Trading with the Enemy Act (40 U. S. Stat. at Large, 411, chap. 106, as amd. by Id. 459, chap. 28) giving the Alien Property Custodian the right to dispose of property held by him in trust, does not invalidate a sale of such property to an alien. Notwithstanding the fact that a sale is made with the knowledge of the purchaser's alienage, the transaction is not void but merely voidable at the option of the government.

Accordingly, a second defense, interposed by the defendant herein to plaintiff's action to enjoin said defendant from unfair competition in that said defendant is using the name " Bosch " under which the plaintiff manufactures and sells motor products, which raises the point that the plaintiff's assignor did not acquire good title to the assets of the original corporation on a sale by the Alien Property Custodian pursuant to the provisions of the Trading with the Enemy Act in 1918, should be stricken out as insufficient in law.

However, a third separate defense which attacks the legality of the sale of the assets of said corporation to plaintiff's predecessor and recites a conspiracy between the Alien Property Custodian and others with plaintiff's assignor to seize the assets of the company on a pretense that it was enemy owned, that the public offer and sale of the property were manipulated through the influence of the official position of the Alien Property Custodian so that the property was struck off to plaintiff's assignor who caused the plaintiff company to be

**120** AMERICAN BOSCH MAGNETO CORP. *v.* BOSCH M. CO., INC.

Supreme Court, April, 1926.　　　　　　　　　　[Vol. 127

organized to acquire it, and that some of the alleged conspirators became the principal stockholders and directors of plaintiff, in so far as it calls in question plaintiff's claim of monopoly in the name and good will of said corporation, presents relevant circumstances to a court of equity in aiding it to determine the right of defendant to trade under the name of "Bosch" in all products, except certain patented articles specifically assigned to plaintiff's predecessor by the original inventor. Moreover, said defense should be sustained by reason of the acquiescence by plaintiff in the use of the name "Bosch" by defendant.

The title of the plaintiff is rendered unimpeachable by section 7 of the Trading with the Enemy Act, and necessarily includes the intangible assets of the company, such as patent rights, trade-marks, good will, etc. The purchaser, even apart from the provisions of the Trading with the Enemy Act, has an unassailable right to the good will connected with the business regardless of the possible fraud involved in its acquisition.

An agreement in 1906 between the inventor and the defendant by which he agreed to sell and assign to defendant all his right, title and interest for the territory covered by the United States to and in all patents theretofore obtained by him relating to devices for magneto electric ignition and the good will for the same territory of the business and trade in said articles warrants a finding that the good will transferred by said inventor was limited to the business and trade in patented articles acquired and developed by him prior to 1906. It cannot be interpreted as an undertaking to give the corporation the exclusive right to the use of the name "Bosch" or a monopoly to conduct a business under that name.

MOTION by plaintiff under rules 109 and 103 of the Rules of Civil Practice to strike out separate defenses as insufficient in law and to strike out allegations in counterclaims as frivolous and irrelevant.

*Root, Clark, Howland & Ballantine* [*Elihu Root, Jr.,* of counsel], for the plaintiff.

*Harvey T. Andrews* [*Hiram C. Todd* of counsel], for the defendant.

LEVY, J. In this action brought by the plaintiff to enjoin the defendant from unfair competition, the former moves under rules 109 and 103 of the Rules of Civil Practice to strike out the second and third separate defenses as insufficient in law, and also to strike out the allegations of these defenses as incorporated in the two counterclaims, on the ground that they are frivolous and irrelevant.

The plaintiff alleges that it is a domestic corporation organized in 1919; that it acquired the assets of the Bosch Magneto Company from one Kern who had purchased the stock of that company from the Alien Property Custodian in 1918; that the old Bosch Company had acquired its assets in 1906 from one Robert Bosch, a citizen of Germany; that since 1919 the plaintiff has been engaged in the business previously conducted by the old company — the manufacture and sale of magnetos and similar electrical products, using the name "Bosch" in connection with these, and that the

defendant was organized in 1921 under the name " Robert Bosch Magneto Company, Inc.," and has been using the name " Bosch " in connection with the sale of products similar to those sold by the plaintiff.

The defendant, while admitting many of the allegations of the complaint, sets up three separate defenses, the legal sufficiency of the second and third of which is challenged by this application. The second separate defense raises the point that Kern, through whom the plaintiff claims the property of the original Bosch Magneto Company, acquired no title on the sale by the Alien Property Custodian, because he was an alien. This defense is founded on the provisions of section 12 of the Trading with the Enemy Act (40 U. S. Stat. at Large, 411, chap. 106, as amd. by Id. 459, chap. 28), which, in giving the Custodian the right to dispose of property thus held by him in trust, makes the following qualification: " *Provided,* That any property sold under this Act, except when sold to the United States, shall be sold only to American citizens, at public sale to the highest bidder, after public advertisement of time and place of sale   *   *   *   unless the President stating the reasons therefor, in the public interest shall otherwise determine."

Was such a sale void by reason of Kern's alienage? The United States Supreme Court has held in the public land cases that the title of aliens who have acquired such land notwithstanding the limitation of the right of acquisition to American citizens is voidable, not necessarily void. In *McKinley Creek Mining Co.* v. *Alaska United Mining Co.* (183 U. S. 563) the court said (at p. 572): " The meaning of *Manuel* v. *Wulff* [152 U. S. 505] is that the location by an alien and all the rights following from such location are voidable, not void, and are free from attack by anyone except the Government." On the other hand, the defendant points to the cases of *Waskey* v. *Hammer* (223 U. S. 85) and *Kendall* v. *Ewert* (259 id. 139) in support of its contention that transfers of land in contravention of this statute are absolutely void. In the former case the plaintiffs brought an action of ejectment against the defendants, the subject-matter of which was the overlapping portions of two placer mining claims in Alaska. The defendants claimed title under one Whittren who at the time he readjusted the claims previously located by him was a United States mineral surveyor. Section 452 of the Revised Statutes of the United States provides that " the officers, clerks, and employees in the General Land-Office are prohibited from directly or indirectly purchasing or becoming interested in the purchase of any of the public land; and any person who violates this section shall forthwith be removed from his office." As the defendants' predecessor had located the claim in violation of the

**122** AMERICAN BOSCH MAGNETO CORP. *v.* BOSCH M. CO., INC.

Supreme Court, April, 1926. [Vol. 127

statute, the court held he had acquired no title and could, therefore, grant none. The court dismissed the contention that the only penalty for the illegal act was the removal of the offender from office and that the acts done in violation of the law were valid against all but the government, by saying that " it is reasonably inferable, from the language of the section and the situation with which it deals, that it is intended that violations of it shall be attended by the ordinary consequences of unlawful acts. We therefore are of opinion that the readjusted location was void."

The case of *Ewert* v. *Bluejacket* (259 U. S. 129) also raised the question of the title of one who had purchased Indian lands at the time he was holding office as Special Assistant Attorney-General to aid in the prosecution of suits involving title to such lands. This purchase was made in the face of the statute (Act of June 30, 1834, chap. 162, § 14, 4 Stat. 738) which provided that " no person employed in the Indian Department shall have any interest or concern in any trade with the Indians." The court held that the purpose of the law was " to protect the inexperienced, dependent and improvident Indians from the avarice and cunning of unscrupulous men in official position and at the same time to prevent officials from being tempted, as they otherwise might be, to speculate on that inexperience or upon the necessities and weaknesses of these ' Wards of the Nation.' "

It seems to me that the reasons which prompted the courts to declare the transactions in the foregoing cases as entirely void do not apply to the situation at bar. The law which forbade public officials from acquiring certain public or Indian lands in contravention of appropriate statute was designed to prevent corruption among the representatives of the government and to protect others from scheming and designing persons. Mere removal from office might scarcely reach the root of the evil as it would still leave the violators of law in secure enjoyment of the fruits of their corruption. But the rule embodied in the Trading with the Enemy Act was not intended apparently to deal with acts which are *mala in se*, but only such as are *mala prohibita*. It is obvious that if the Alien Property Custodian innocently or even negligently sold property to an alien, the law did not intend to declare the transaction completely null and thereby to vitiate the title of subsequent purchasers. Thus it would seem that even a sale with knowledge of the purchaser's alienage would not be such a vicious act on the part of a public official, in view of the purposes of the act, as absolutely to void such sale but only to render it voidable at the option of the government, under the rule laid down in the *McKinley Creek Mining Company* case.

The third separate defense attacks the legality of the sale of the assets of the Bosch Magneto Company to the predecessor of the plaintiff and presents the claim that such sale was fraudulent and made pursuant to a conspiracy. It further contains an allegation of acquiescence by the plaintiff in defendant's use of the name " Bosch " in connection with its business. In addition, a series of allegations are urged justifying defendant's use of the name " Bosch," either by an equal or a superior right to plaintiff's. Apparently, too, the recital of facts tending to support the charge of illegality of the sale is intended to present the additional equitable defense that the plaintiff does not come into court with clean hands. Of course, the propriety of merging all these defenses into one is open to serious question, as is also the matter of the appropriateness of several allegations of fact. But as the notice of motion is addressed to the validity of the entire separate defense as such, the latter will have to be sustained if it contains any facts which will support it, notwithstanding that the pleading may be made the subject of a separate attack on the ground of multifariousness, redundancy or otherwise.

The allegations of fraud and conspiracy are seemingly supported by a narrative of a sequence of events leading to the acquisition by the plaintiff of the assets of the Bosch Magneto Company. The defense recites a conspiracy by A. Mitchell Palmer, Alien Property Custodian — aided by Francis P. Garvan and others — with the plaintiff's assignor Kern to seize the assets of the company on the pretense that it was enemy owned. Facts are then alleged tending to show that the public offer and sale of the property were manipulated through the influence of Palmer's official position, so as to discourage fair bidding; that the good will was valued at practically nothing; and that through the connivance of the public officials the property was struck off for a grossly inadequate price to Kern, who caused the plaintiff company to be organized to acquire it. The defense further indicates that the conspirators or some of them are the principal stockholders and directors of the plaintiff.

The facts if true, and for the purpose of these considerations they must be accepted as such, indeed shock the conscience of a court of equity. Under ordinary circumstances, it would require no discussion to show that a valid issue of plaintiff's " unclean hands " is presented by this defense. But plaintiff's reply is *first,* that under the Federal statutes its title cannot be questioned; and *secondly,* that the defendant as a stranger to the title is not the proper party to attempt to impeach it even on the ground of fraud and conspiracy. In support of the first contention it is urged

**124** AMERICAN BOSCH MAGNETO CORP. *v.* BOSCH M. CO., INC.

Supreme Court, April, 1926.                    [Vol. 127

that section 12 of the Trading with the Enemy Act vested in the Alien Property Custodian power to convey an absolute title to seized property, which a transferee would take free from any claim or lien in favor of the former enemy owner. Furthermore, under section 7 of the same act, it is argued that even a wrongful sale of such property would give a person aggrieved relief merely against the proceeds of the sale. The provision to this effect as contained in the latter section reads as follows: " The sole relief and remedy of any person having any claim to any money or other property heretofore or hereafter conveyed, transferred, assigned, delivered, or paid over to the Alien Property Custodian, or required so to be, or seized by him shall be that provided by the terms of this Act, and in the event of sale or other disposition of such property by the Alien Property Custodian, shall be limited to and enforced against the net proceeds received therefrom and held by the Alien Property Custodian or by the Treasurer of the United States." (40 U. S. Stat. at Large, 411, chap. 106, as amd. by Id. 1020, chap. 201.)

It is perfectly clear that the purpose of this section was to give assurance of title to purchasers and impress these sales with finality; otherwise endless confusion would undoubtedly result in the commercial world from alleged defective title by reason of acts of malfeasance of the Alien Property Custodian or possibly from other cause. Accordingly, even where property of American citizens or friendly aliens was wrongfully seized and sold, the persons offended were permitted no redress beyond their recovery as limited by the funds realized upon the sale by the Alien Property Custodian. (*Sigg-Fehr* v. *White*, 285 Fed. 949; *Henkels* v. *Miller*, 4 F. [2d] 988.) Of course, the law may not be construed to prevent persons thus wronged from maintaining an action for damages against the Alien Property Custodian individually as also against others who participated in any actual conspiracy. But as regards the title of the plaintiff to the assets purchased from the Custodian, the law seems to have rendered it unimpeachable. This title necessarily includes the intangible assets of the Bosch Magneto Company, such as patent rights, trade-marks, good will, etc., and cannot be limited to the physical property acquired.

As to the second contention, the plaintiff argues soundly that as against a stranger, the purchaser, even apart from the provisions of the Trading with the Enemy Act, has an unassailable right to the good will connected with the business regardless of the possible fraud involved in its acquisition. On this principle, the court in *Reynolds Tobacco Co.* v. *Allen Bros. Tobacco Co.* (151 Fed. 819), refused, in an action to enjoin unfair competition, to entertain

a defense to the effect that plaintiff's right involved a violation of the Sherman Anti-Trust Act. In passing upon this the court took occasion to say (at p. 823): " It is a well-settled principle that, as against a trespasser, possession of the premises is sufficient." Assuming, therefore, that the defendant is not in privity with any party whom the plaintiff succeeded, defendant's challenge of plaintiff's title by reason of fraud would be insufficient. It appears, however, that with these allegations, inadequate in themselves, the defendant couples others which are intended to support its right to conduct its business without interference by the plaintiff, by reason of a grant through intermediate assignments from Robert Bosch who was one of its stockholders and who was also the founder of the business which the plaintiff ultimately acquired. It is true that if Robert Bosch by his conveyance to plaintiff's predecessors completely divested himself of all rights in the premises, defendant's claim through him could be of no avail. Consequently, it is necessary to examine the facts bearing on this point as they appear in the pleadings.

In 1906 Robert Bosch entered into an agreement with Robert Bosch, New York, Inc., by the terms of which he agreed " to sell, assign and transfer to this company all his right, title and interest for the territory covered by the United States of America to and in all patents heretofore obtained by him relating to machines, apparatus and devices for magneto electric ignition and the good will for the same territory of the business and trade in said articles heretofore acquired and developed by him, including all contracts relating to said business entered into by him within this territory, in exchange for 175 shares of the capital stock of this company." Subsequently, the name of the corporation was changed to the " Bosch Magneto Company," the business of which was acquired by the plaintiff in the manner already described. A reading of the terms of the agreement indicates that the good will transferred by Robert Bosch was limited to the business and trade in patented articles acquired and developed by him prior to 1906. It cannot, save in connection with those articles, be construed as a negative covenant on his part not to engage in business in American territory. Nor can it be interpreted as an undertaking to give the corporation the exclusive right to the use of the name " Bosch " or a monopoly to conduct a business under that name. The case of *Merritt Burial & Cremation Co.* v. *Merritt Co.* (214 N. Y. 676) aptly illustrates the fact that the mere sale of a business to a corporation which embodies the name of the seller in its corporate title, does not prevent him from entering into the same kind of business under his own name. In the consideration of that case in the

Appellate Division (155 App. Div. 565) Presiding Justice INGRAHAM in his dissenting opinion, which was adopted by the Court of Appeals in modification, said: " But I can find in this record no evidence * * * of any agreement by which the individual defendants had agreed either that the plaintiff should have the right to transact business under that name or which, either expressly or by implication, prevented either of these defendants from transacting this or any other business."

After his sale of the American rights in his patents, Robert Bosch continued exploiting his business in Germany, and he would have been quite free to do so in the United States except to the extent of the good will and the patented articles which he had assigned previously to the corporation. During the war he conveyed his business to a German corporation which thereafter transferred its territorial rights in the United States to the defendant. Under the authorities cited, there can be no question about his right to conduct a magneto business in his name (*Meneely* v. *Meneely*, 62 N. Y. 427), except, of course, that such right would not authorize him to employ such name in a manner or form to lead consumers to believe that they were purchasing plaintiff's products. Does this right to the use of the name inure to the benefit of the defendant, claiming title through him, in view of plaintiff's earlier acquisition? The question is not without difficulty. In the *Merritt* case the right to the use of the name " Stephen Merritt " was limited to the individual of that name and withheld from the corporation. But that decision was predicated on the peculiar facts showing fraud on the part of the defendant corporation with resulting confusion in the trade. In *Higgins Co.* v. *Higgins Soap Co.* (144 N. Y. 462) an injunction was allowed against the use by the defendant of the corporate name; but here again the court based its conclusion upon the consideration of the peculiar evidence in the case and of the long-established reputation of the plaintiff extending for nearly fifty years, and the large sums expended by it in advertising its name. In arriving at this judgment it expressly said (at p. 470): " If the right of the plaintiff to relief depended exclusively upon the comparison of the corporate names of the parties, and the inferences to be drawn from such comparison alone and without reference to any extrinsic facts, it might well be doubted whether the names are so similar that the court could find that confusion and injury would be likely to arise."

The defendant specifically alleges in the defense under consideration that it is using the name " Bosch " on its products in such a way as to clearly distinguish it from the manner in which it is employed on plaintiff's wares. As to its corporate name, we may well say,

paraphrasing the language in the *Higgins* case, that it might be doubted whether its name is so similar to plaintiff's that the court could find that confusion and injury would be likely to occur. When, in addition, we come to consider the extrinsic facts, the doubt seems to be removed. Plaintiff, by its own declaration, considered the good will of the business which it purchased as nominal. It paid practically nothing for it. Defendant is not attempting to destroy any good will, but must be deemed, if we disregard what might seem to be the extravagant claims contained in the counterclaims, merely to challenge plaintiff's monopoly in the name. While the various charges of fraud and conspiracy in connection with the acquisition of the business by the plaintiff are insufficient in themselves for purposes of the defense, some of them, in so far as they call in question plaintiff's claim of monopoly in the name and good will, present relevant circumstances to a court of equity in aiding it to determine the right of the defendant to trade under its name in all products except the patented articles specifically assigned to plaintiff's predecessors by Robert Bosch. But as already pointed out, defendant's use of the name must be such as not to lead purchasers to believe that its products are those of plaintiff. There being allegations in the defense of defendant's precautions in this direction, it must be held sufficient. Additional ground for sustaining the third separate defense may be found in the allegations of acquiescence by the plaintiff in the use of the name by the defendant. (*Menendez* v. *Holt*, 128 U. S. 514, 523.)

As to the motion in so far as it is addressed to the two counterclaims, the plaintiff seeks to strike out the allegation which reincorporates all the matters contained in the separate defenses relating to the charges of fraud and conspiracy and the void nature of plaintiff's title. The defendant in these counterclaims asserts an exclusive right and title to the name " Bosch " and the good will appertaining thereto, and seeks damages for plaintiff's alleged infringement in the sum of $10,000,000. I have already indicated that the defendant is not in a position to challenge plaintiff's title, although defendant, on the other hand, has certain rights in its name, etc., of which it cannot be divested. But in these counterclaims defendant lays claim to a monopoly in the name " Bosch," which it may not do. No matter at what nominal figure the name of the Bosch Magneto. Company was valued and sold, in the transfer of its entire stock by the Alien Property Custodian as we have seen, the sale was a valid one under the law and included the right to conduct the business and the privilege to use the name. The equitable defenses of which the defendant may take

advantage in protecting itself in its right to live are wholly insufficient as offensive weapons.

The motion to strike out the second separate defense is granted, but denied as to the third separate defense. The motion to strike out the certain allegations in the first and second counterclaims is granted, except that the defendant is at liberty to reincorporate by reference the matters pleaded in paragraphs 16 to 18, both inclusive, of the first separate defense. Settle order.