FARBENFABRIKEN BAYER A.G., Appellant,

v.

STERLING DRUG, INC.

No. 13807.

United States Court of Appeals Third Circuit.

Argued May 7, 1962.

Decided Aug. 9, 1962.

See also 307 F.2d 207.

Thurman Arnold, Washington, D. C. (Milton V. Freeman, Edgar H. Brenner, Werner J. Kronstein, Arnold, Fortas & Porter, Washington, D. C., Jay E. Bailey, Bailey & Schenck, Newark, N. J., on the brief), for appellant.

Robert G. Zeller, New York City (John T. Cahill, New York City, Cahill, Gordon, Reindel & Ohl, New York City, Rogers, Hoge & Hills, New York City, O'Mara, Schumann, Davis & Lynch, Jersey City, N. J., on the brief), for appellee.

Before McLAUGHLIN, STALEY and GANEY, Circuit Judges.

STALEY, Circuit Judge.

This is a civil action commenced under the antitrust laws, § 1 of the Sherman Anti-Trust Act, 15 U.S.C.A. § 1, and §§ 4 and 6 of the Clayton Act, 15 U.S.C.A. §§ 15 and 26. In its complaint, plaintiff alleged that defendant has without right asserted trademark rights in the word "Bayer" and the Bayer Cross, as a means of suppressing competition, and that such assertion constitutes a violation of the antitrust laws. Plaintiff requested injunctive relief and treble damages. The essence of the prayer for injunctive relief was that defendant be directed to give all necessary consents and licenses, without cost, to permit plaintiff to import into or manufacture in the United States, products under the name Bayer and the use of the Bayer Cross trademark, and that the district court prescribe a procedure permitting the products of both plaintiff and defendant to be offered and sold under that name and trademark but

in such a manner as to distinguish the source of the product.

In 1953, plaintiff, Farbenfabriken Bayer, A.G., a corporation organized under the laws of the Federal Republic of Germany, took over a part of the business formerly conducted by I. G. Farbenindustrie, A.G. ("Farben"). In 1925, Farben succeeded Farbenfabriken vorm. Freidrich Bayer & Company ("Farbenfabriken"). Farbenfabriken formed two New York corporations in 1913, Synthetic Patents Company, Inc., and The Bayer Company, Inc. ("Bayer").

Defendant, Sterling Drugs, Inc., a Delaware corporation, is, like plaintiff, engaged in the development, manufacture and sale of drugs and pharmaceuticals. After the United States entered the First World War, the Alien Property Custodian seized Farbenfabriken's assets in the United States, including the stock of Bayer, and in 1918 sold them to defendant. Thereafter, Bayer's ethical drug business was transferred to its newly organized subsidiary, Winthrop Chemical Company, Inc., and in 1923, the capital stock of Winthrop was transferred to defendant.

In 1923, Farbenfabriken and Bayer entered into a cartel agreement involving a world division of markets. It was admitted in the district court that the agreement was violative of the antitrust laws.[1]

Concluding that the statute of limitations had expired, the district court dismissed plaintiff's claim for damages, 153 F.Supp. 589 (D.N.J., 1957),[2] and denied the request for injunctive relief on the basis "that the equitable remedy available under Section 16 is predicated upon the legal cause of action created by Section 4," and that inasmuch as the legal claim for damages was barred, the equitable remedy would be denied.

Although the parties have raised numerous questions on this appeal, we shall limit our discussion to the dispositive one.

The defendant contends that by purchasing the stock of Bayer from the Alien Property Custodian in 1918, it acquired the trademarks in question as they were assets of Bayer. Plaintiff says that defendant's continued use of the trademarks is based exclusively on the illegal 1923 agreements.[3] Plaintiff admits that the purchase of Bayer stock by defendant gave it all the rights Bayer had in the trademarks, but says that the right to use the trademarks was restricted to pharmaceuticals "manufactured and (or) controlled" by Farbenfabriken. In any event, it says that it has a right to concurrent use of the trademarks and cites American Bosch Magneto Corp. v. Robert Bosch Magneto Co., 127 Misc. 119, 215 N.Y.S. 387 (1926).

■■■ We think that defendant acquired absolute rights to the exclusive use of the trademarks in question by its purchase of Bayer.[4]

The power vested in the Alien Property Custodian was clearly spelled out in the Trading with the Enemy Act ("Act"), originally passed on October 6, 1917, 40 Stat. 411, and amended on March 28,

---

1. The agreement was adjudged violative of the antitrust laws by the United States District Court for the Southern District of New York on September 5, 1941, in United States v. The Bayer Co., Civil Action No. 15-364.

2. The district court originally relied on the New Jersey six year statute of limitations contained in N.J.S.A. 2A:14-1. Thereafter, the district court, D.C., 197 F.Supp. 627, following our decision in Gordon v. Loew's, Inc., 3 Cir., 247 F.2d 451 (1957), modified its order and applied the two year limitation contained in N.J.S.A. 2A:14-10.

3. In addition to the 1923 agreement with Bayer, plaintiff in that year executed an agreement with Winthrop wherein plaintiff agreed not to contest title to the trademarks Bayer and the Bayer Cross.

4. Of course, this court can affirm based on the record before it, even though the grounds be different than those of the district court. Continental Ore Co. v. Union Carbide & Carbon Corp., 289 F. 2d 86 (C.A.9, 1961); Ginsburg v. Black, 237 F.2d 790 (C.A.7, 1956), cert. denied, 353 U.S. 911, 77 S.Ct. 669, 1 L.Ed.2d 665 (1957).

1918, 40 Stat. 460, 50 Appendix U.S.C.A. § 12. It provided in pertinent part:

"The alien property custodian shall be vested with all of the powers of a common-law trustee in respect of all property, other than money, which has been or shall be, or which has been or shall be required to be, conveyed, transferred, assigned, delivered, or paid over to him in pursuance of the provisions of this Act, and, in addition thereto, acting under the supervision and direction of the President, and under such rules and regulations as the President shall prescribe, shall have power to manage such property and do any act or things in respect thereof, or make any disposition thereof, or of any part thereof, by sale or otherwise, and exercise any rights or powers which may be or become appurtenant thereto or to the ownership thereof in like manner as though he were the absolute owner thereof * * *."

█ As the statute unmistakably shows, it was the intention of Congress to enable the Alien Property Custodian to sell property as fully as the owner could, and a sale by the Custodian is as complete as if it were a voluntary conveyance by the foreign corporation (Farbenfabriken) whose assets were seized. Koppel Industrial Car & Equipment Co. v. Orenstein & Koppel Aktiengesellschaft, 289 F. 446 (C.A.2, 1923). That Congress intended to give finality to sales by the Custodian is best shown by a 1918 amendment to the Act, which provided that

"The sole relief and remedy of any person having any claim to any money or other property heretofore or hereafter conveyed, transferred, assigned, delivered, or paid over to the Alien Property Custodian, or required so to be, or seized by him shall be that provided by the terms of this Act, and in the event of sale or other disposition of such property by the Alien Property Custodian, shall be limited to and enforced against the net proceeds received therefrom and held by the Alien Property Custodian or by the Treasurer of the United States." 40 Stat. 1020, 50 Appendix U.S.C.A. § 7.

It becomes imperative, therefore, to determine what rights Bayer had in the trademarks Bayer and Bayer Cross, for admittedly the Alien Property Custodian transferred all of Bayer's rights to defendant. In 1908, Farbenfabriken of Elberfeld Company, a New York corporation wholly owned by Farbenfabriken, registered the trademarks in the United States. The trademarks were registered on the basis that Farbenfabriken of Elberfeld had used them since 1895. In 1913, Farbenfabriken dissolved Farbenfabriken of Elberfeld. In the same year, Bayer was incorporated under New York law, whereupon certain assets, including the trademarks in question, were transferred to it. At its first Board of Directors meeting, Bayer authorized and directed its officers to enter into certain contracts with Farbenfabriken. One of them, dated June 12, 1913, provided:

"Bayer Co. agrees, and binds itself hereby, to pay unto Leverkusen [Farbenfabriken] the sum of Seven Hundred and Fifty Thousand Dollars ($750,000) in lawful money of the United States on or before the 12th day of June, 1916. And Leverkusen hereby consents to and ratifies the sale, transfer and assignment to Bayer Co. by the New York corporation Farbenfabriken of Elberfeld Co. of the right for the sale in the United States and Canada of the drugs, chemicals, pharmaceuticals and any and all other products and articles manufactured and (or) controlled by Leverkusen; and Leverkusen also hereby consents to and ratifies the sale, transfer and assignment by said Farbenfabriken of Elberfeld Co. to Bayer Co. of its (said Farbenfabriken of Elberfeld Co.'s) trade-marks, good will and other assets and property."

Use of those trademarks by Bayer and its successor, defendant, has been exclu-

sive since 1917. The agreement, execution of which has never been denied, was fully performed by Bayer. It was absolute and neither imposed any limitation on use of the trademarks nor retained any interest therein in favor of Farbenfabriken. The agreement presents no problem of construction, and all that is left to us is to give force to the plain words.

Furthermore, in its complaint, plaintiff alleged that defendant, as a result of the sale by the Alien Property Custodian "obtained control in the United States of the trademark Bayer, and the Bayer Cross and the name Aspirin (then a valid trademark in the United States), as well as a host of other valuable trade names," and in paragraph 18, as follows:

"Thus Sterling found itself in possession of the invaluable Bayer trademarks in the United States, probably the most important single market in the world. At that time, Bayer which was the original and true owner of the name, was in a weak and defenseless position."

Plaintiff says, however, that the conveyance of trademark rights to Bayer was not absolute but was restricted to use of the trademarks to pharmaceuticals "manufactured and (or) controlled" by Farbenfabriken. It points to a distributorship contract executed between Bayer and Farbenfabriken in 1913. But the agreement of purchase of trademarks was not so limited. For us to so conclude would require a rewriting of the trademark agreement. This we are not free to do. Each agreement was a separate one, individually executed, and in no way making reference to the other. The distributorship contract was limited in time, while the other was absolute and contained no time limitation.

Having shown that defendant had full and complete ownership of the trademarks in question, the plaintiff necessarily does not have a right to concurrent use of them. In this regard, it refers us to American Bosch Magneto Corp. v. Robert Bosch Magneto Co., 127 Misc. 119, 215 N.Y.S. 387 (1926). There, the company whose assets the Alien Property Custodian seized and sold had only limited rights in the trademark.

 Since we have determined that defendant acquired the trademarks without restriction as to use, defendant's mere exercise of its full rights therein cannot constitute such a misuse as to be the basis for an action under the antitrust laws. "It would be a paradox to say that the exercise of a right, expressly granted by law, is unlawful." Coca-Cola Co. v. J. G. Butler & Sons, 229 F. 224, 232 (E.D.Ark.1916).

The judgment of the district court will be affirmed.