COMMUNITY HOSPITAL,
Plaintiff–Appellee,

v.

Louis W. SULLIVAN, in his official capacity as Secretary of the United States Department of Health and Human Services, Defendant–Appellant.

No. 92–1065.

United States Court of Appeals,
Tenth Circuit.

Feb. 16, 1993.

Rehearing Denied March 30, 1993.

**358**

Steve Frank (Stuart M. Gerson, Asst. Atty. Gen., Michael J. Norton, U.S. Atty., and Anthony J. Steinmeyer with him on the brief), Appellate Staff Civ. Div., Dept. of Justice, Washington, DC, for defendant-appellant.

Carel T. Hedlund (Venel D. Brown with her on the brief) of Ober, Kaler, Grimes & Shriver, Baltimore, MD, for plaintiff-appellee.

Before KELLY, Circuit Judge, BARRETT, Senior Circuit Judge, and OWEN *, District Judge.

BARRETT, Senior Circuit Judge.

The United States Government (Government), on behalf of Louis W. Sullivan, Secretary of Health and Human Services (Secretary), appeals a district court order reversing the Secretary's refusal to designate Community Hospital (Community) as a sole community hospital (SCH) under the Medicare reimbursement system and directing the Secretary to classify Community as such.

### Statutory and Regulatory Background

This case arises under the Medicare Act, 42 U.S.C. § 1395 (1992). Since Medicare's inception, two systems have been used to provide payment to participating hospitals. From 1965 to 1983, hospitals were reimbursed for the lesser of the "customary charge" or "reasonable cost" of the services provided to Medicare beneficiaries.

In 1983, Congress reformed the reimbursement system, replacing the "reasonable cost" methodology with a prospective payment system whereby hospitals were paid fixed amounts based on patients' diagnoses. With this change, Congress intended to "promot[e] efficiency in the provision of services by rewarding cost-effective hospital practices." H.R.Rep. No. 25, 98th Cong., 1st Sess. 132, *reprinted in* 1983 U.S.C.C.A.N. 219, 351. Congress recognized that the new, more cost effective system could result in closure of less efficient hospitals. It also understood that the adverse impact on patients would be minimal, except in areas where the hospital in question was a SCH and the primary deliverer of hospital services. To circumvent this potential impact, Congress authorized the Secretary to make appropriate adjustments to account for the special needs of SCHs. Thereafter, the Secretary promulgated regulations exempting SCHs from cost reimbursement limitations.

From 1983 until Congress later amended the statute in 1989, Congress statutorily defined SCH as "a hospital that, by reason of factors such as isolated location, weather conditions, travel conditions, or absence of other hospitals (as determined by the Secretary), is the sole source of inpatient hospital services reasonably available to in-

---

* The Honorable Richard Owen, Senior District Judge, for the Southern District of New York, sitting by designation.

dividuals in a geographic area...." 42 U.S.C. § 1395ww(d)(5)(C)(ii) (1983).

By the time the instant action was brought, Congress had amended the statute to redefine SCH as

> any hospital—(I) that the Secretary determines is located more than 35 road miles from another hospital, (II) that, by reason of factors such as the time required for an individual to travel to the nearest alternative source of appropriate inpatient care (in accordance with standards promulgated by the Secretary), location, weather conditions, travel conditions, or absence of other like hospitals (as determined by the Secretary), is the sole source of inpatient hospital services reasonably available to individuals in a geographic area who are entitled to benefits under part A of the subchapter, or (III) that is designated by the Secretary as an essential access community hospital under section 1395i–4(i)(1) of this title.

42 U.S.C. § 1395ww(d)(5)(D)(iii) (1992).

Further, the Secretary added to the definition of SCH the proviso that the Health Care Financing Administration "will not evaluate comparability of specialty services in making determinations on classifications as sole community hospitals." 42 C.F.R. § 412.92(c)(2) (1990). Additionally, hospitals which had previously been classified as SCHs under the prior reimbursement system would be grandfathered in as SCHs and would not have to meet the new requirements. 42 C.F.R. § 412.92(b)(5). Finally, at this same time, "like hospital" was defined as a facility "furnishing short-term, acute care."

### Factual Background

Community is an osteopathic facility furnishing short-term, acute care in Grand Junction, Colorado. The nearest osteopathic hospital is located in Albuquerque, New Mexico, 500 miles from Community. St. Mary's Health Center (St. Mary's), an allopathic facility furnishing short-term, acute care, is located less than six blocks from Community.

In 1985, under the statutory and regulatory scheme in effect at that time, a federal district court determined that St. Mary's could be classified as a SCH because it was not located near a "like hospital." *St. Mary's Hosp. and Medical Ctr. v. Heckler*, [1985 Transfer Binder] Medicare and Medicaid Guide (CCH) ¶ 34,660, 1985 WL 56559 (D.Colo. Feb. 7, 1985) (*St. Mary's*). The *St. Mary's* decision rested on two bases. First, Community was an osteopathic facility while St. Mary's was an allopathic hospital. Second, at the time of the decision, Community provided limited services; it did not have the intensive or cardiac care, therapeutic radiology, or emergency facilities which St. Mary's had. The *St. Mary's* court indicated that "[a]ll of these factors must be considered in talking about like facilities." It further noted that "[t]he fact that both [St. Mary's and Community] are classified as general acute care short-term hospitals is just not sufficient in considering like facilities."

In May 1990, Community applied for SCH status, relying on the *St. Mary's* decision and asserting that it was located more than 35 miles from any "like hospital." The Secretary denied the request, claiming that Community and St. Mary's were "like hospitals."

The Provider Reimbursement Review Board granted Community's request for expedited judicial review, and Community subsequently appealed the denial of SCH status in the federal district court for the District of Colorado. There, Community alleged (1) that the definition of "like hospital" was invalid as applied to Community, (2) that it relied on the determination in *St. Mary's* which found the two facilities were not "like hospitals," and (3) that the Secretary was collaterally estopped from raising the "like hospital" issue, as it had been previously litigated in *St. Mary's*.

Following the filing of an answer by the Government, the court, *sua sponte*, granted judgment on the pleadings to Community. Relying on the 1985 *St. Mary's* decision, the court reversed the Secretary's decision denying SCH status to Community and directed the Secretary to designate Community as such.

## Standard of Review

■ In reviewing the Secretary's decision denying SCH status to Community, we are to "hold unlawful and set aside agency action, findings and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1988). Our review is based on the same administrative record which was before the district court, and the district court decision is afforded no particular deference. *Franklin Savs. Ass'n v. Director, Office of Thrift Supervision*, 934 F.2d 1127, 1142 (10th Cir. 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1992). *See also Webb v. Hodel*, 878 F.2d 1252, 1254 (10th Cir.1989).

## I. Collateral Estoppel

■ Community asserts that the Government is collaterally estopped from arguing that Community and St. Mary's are "like hospitals," as that issue was litigated in *St. Mary's*. Community contends that nonmutual offensive collateral estoppel applies where, as here, Community seeks to foreclose the Government from raising an issue which the Government previously litigated unsuccessfully in an action with another party.

The Government responds that nonmutual offensive collateral estoppel does not lie against it. *See, e.g., United States v. Mendoza*, 464 U.S. 154, 162, 104 S.Ct. 568, 573, 78 L.Ed.2d 379 (1984). The Government also correctly asserts that collateral estoppel is inapplicable because both the facts and the law in this action are substantially different from those at issue in *St. Mary's*. *See, e.g., Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591, 599–601, 68 S.Ct. 715, 720, 92 L.Ed. 898 (1948) (doctrine of collateral estoppel confined to instances where controlling facts and applicable legal principles remain unchanged). Due to the change in services provided by Community since 1985 and the revision of the applicable statutory and regulatory provisions, we hold that the Government is not precluded from raising the "like hospital" issue.

## II. Deference

■ Community argues that deference to the Secretary's interpretation of the statute is inappropriate in this case because the Secretary's application yields a result contrary to the intent of Congress. *See Webb*, 878 F.2d at 1255 (citing *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 94, 94 S.Ct. 334, 339, 38 L.Ed.2d 287 (1973) (regulations which are inconsistent with congressional intent are entitled to no deference)). According to Community, Congress intended to ensure Medicare beneficiaries' access to efficiently run hospitals. Yet, the Secretary's decision subjects Community to market forces while it protects St. Mary's. Thus, two similarly situated hospitals receive disparate treatment which may ultimately force Community out of business, thereby decreasing access to health care.

■ "Our review of agency action is deferential to the agency, and lacks the customary deference to the district court." *Marczak v. Greene*, 971 F.2d 510, 515–16 n. 9 (10th Cir.1992). We must give "substantial weight to the interpretation made by the agency which is charged with the statute's administration[,] (citation omitted) [and] are obligated to regard as controlling a reasonable, consistently applied interpretation of the government." *Webb*, 878 F.2d at 1255. We will not disturb the Secretary's interpretation if it reflects a permissible construction of the statute and does not otherwise conflict with Congress' expressed intent. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984). This court will not substitute its judgment for that of the agency, but will uphold the agency if there exists a rational basis for the agency's decision. *Thomas Brooks Chartered v. Burnett*, 920 F.2d 634, 643 (10th Cir.1990). In light of Congress' explicit delegation of authority to the Secretary,[1] the Secretary's regulations are entitled to deference from the courts.

---

1. See 42 U.S.C. § 1395ww(d)(5)(D)(iii), *supra.*

### III.  Validity of Regulation

Community asserts that, as applied to it, the regulation defining "like hospital" is invalid.  Community contends (A) that the regulatory definition produces a result contrary to Congressional intent, and (B) that the findings of the *St. Mary's* court are determinative in this case.

### A.

■ While Community claims that the Secretary's interpretation of the Medicare statute yields a result contrary to Congressional intent, Community's analysis of economic disparity between it and St. Mary's is irrelevant.  Congress intended to ensure that the reimbursement cost limits would not adversely impact a hospital which was "the *sole source* of inpatient hospital services reasonably available to individuals in a geographic area." 42 U.S.C. § 1395ww(d)(5)(D)(iii) (1992) (emphasis added).  Congress was concerned "where there is only one hospital in a community" and where, if reimbursement limitations were utilized, "additional charges could be imposed on beneficiaries who have no real opportunity to use a less expensive, non-luxury institution." H.R.Rep. No. 231, 92d Cong., 1st Sess. 84 (1972), *reprinted in* 1972 U.S.C.C.A.N. 4989, 5070.  There is no indication in the language of the statute that Congress intended that the government subsidize specialty hospitals located in the same rural community.  To the contrary, the SCH classification provides exemption from reimbursement limitations only to rural hospitals which are "the sole source" of services available.

When, as here, the "statute is clear and unambiguous[,] that is the end of the matter, for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *K Mart Corp. v. Cartier*, 486 U.S. 281, 291, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988).  In the instant case, because the statute plainly dictates what is considered an SCH, and because the regulation plainly defines "like hospital," "the statutory [and regulatory] language is clear and there is no reason to review the legislative history to

determine congressional intent." *Public Hosp. Dist. No. 1 v. Sullivan*, 806 F.Supp. 1478, 1485 (E.D.Wash.1992).

Community references the grandfather provision in its discussion of Congressional intent.  The grandfather provision provides that hospitals with SCH status prior to the new reimbursement system "will be automatically classified as a sole community hospital [under the new system] unless that classification has been canceled under paragraph (b)(3) of this section, or there has been a change in the circumstances under which the classification was approved." 42 C.F.R. § 412.92(b)(5).  Subsection (b)(3), which addresses the duration of SCH status, provides that "[a]n approved classification as a sole community hospital will remain in effect without need for reapproval unless there is a change in the circumstances under which the classification was approved."

Community asserts that the Secretary's own regulation gives him the authority to revoke SCH status from a grandfathered hospital if there has been a change in circumstances since the time SCH status was granted.  Community submits that the Secretary's failure to review the SCH status of St. Mary's is, in effect, a *de facto* determination that nothing has changed since St. Mary's was classified as a SCH.  Community argues that the Secretary cannot insist that circumstances have changed and thereby deny SCH classification to Community now, while at the same time allow St. Mary's to be grandfathered in because there has been no change in circumstances.

The Government submits, and we agree, that the Secretary did not grant St. Mary's SCH status based on application of the challenged regulation.  To the contrary, the Provider Reimbursement Review Board denied St. Mary's request, a decision which was later reversed by the *St. Mary's* court.  Thus, there has not been a change of circumstances "under which the classification was approved," as the classification was never approved.  We hold that the fact that Congress chose to grandfather in hospitals such as St. Mary's but requires new applicants for SCH status to abide by the cur-

rent statute and regulations does not make the regulation defining "like hospitals" invalid as applied.

### B.

The Government asserts that the district court relied on factual findings made in *St. Mary's* which were outside of the administrative record. The *St. Mary's* decision was the central component in Community's request for SCH designation, and the decision is indisputably a part of the administrative record. However, we agree that the district court improperly relied upon the *St. Mary's* findings as determinative in this case. Particularly, those findings include (1) that Community was a limited hospital, and (2) that Community was an osteopathic facility.

The 1985 decision reflects neither the services which Community now provides nor the statutory and regulatory scheme now in effect. Due to expansion of existing services and development of new ones, Community is no longer considered a limited facility. Additionally, when *St. Mary's* was decided, neither the statute nor the regulations contained the term "like hospital" or its definition. Thus, under the law applied in 1985, the court determined that "[t]he fact that both [St. Mary's and Community] are classified as general acute care short-term hospitals is just not sufficient in considering like facilities." Instead, the *St. Mary's* court found the osteopathic/allopathic distinction sufficient.

Today, however, there is no basis for reaching the same conclusion. Given the fundamental changes to the pertinent statutory and regulatory provisions, the district court erred in relying on the *St. Mary's* decision as determinative. Under the revised statutory and regulatory scheme applicable here, it *is* sufficient, for SCH designation purposes, that the hospitals at issue are located within 35 miles of

each other and that both are classified as short-term, acute care facilities.

Community continues to assert that, because of the distinction between osteopathic and allopathic facilities,[2] it remains fundamentally different from St. Mary's. Concerning the proviso that comparability of specialty services will not be evaluated, Community submits that osteopathy is not a "specialty service," but is rather an entire systematic approach to the treatment of diseases which affects all services Community provides.

The Government notes that to the extent that the *St. Mary's* court relied upon the comparability of specialty services in reaching its decision, namely the osteopathic/allopathic distinction, similar analysis is not permissible under the present, revised regulatory scheme. We agree and hold that by similarly relying on this distinction in reaching its decision, the district court herein failed to apply the regulatory definition of "like hospital." Nothing in today's Medicare statute expresses Congress' intent that various medical philosophies be fostered through the SCH designation. Congress sought to exempt a rural facility located more than 35 miles from other like hospitals, regardless of medical orientation. Had the district court simply applied the regulatory definition of "like hospital," it would have concluded that, because both hospitals furnish "short-term, acute care" within six blocks of one another, regardless of the fact that Community does so within the osteopathic theory of medicine, the two facilities meet the current definition of "like hospitals."

### Conclusion

Community concedes in its complaint that it furnishes short-term, acute care and is located within 35 miles of St. Mary's, a facility which also provides short-term, acute care. Under the current statutory

---

**2.** While allopathic medicine is practiced by doctors of medicine, osteopathic medicine is practiced by doctors of osteopathy. According to the American Osteopathic Association, "osteopathic medicine focuses special attention on the biological mechanisms by which the musculoskeletal system ... interacts with all body organs and systems[,] [which] provides osteopathic physicians and their patients an added dimension of health care." Diagnosis and treatment are "through palpation and appropriately applied manipulative procedures ... in combination with all other accepted diagnostic and therapeutic modalities...."

and regulatory scheme, Community cannot qualify for SCH status. The fact that St. Mary's attained SCH status under a different set of facts and pursuant to different statutory and regulatory provisions does not make the current rules invalid as applied. We conclude that the presence of another short-term, acute care facility within 35 miles is *all* that is required to make SCH status unavailable to Community. Accordingly, we REVERSE the decision of the district court and we REMAND the case with instruction to reinstate the Secretary's determination which denied SCH status to Community.